OPINION OF THE COURT
William B. Braatz, J.
By show cause order the petitioners herein, pursuant to *1051 CPLR article 78, seek a judgment annulling, setting aside and declaring illegal Local Laws, 1987, No. 3 of the Town of Carmel, amending chapter 50 (Subdivision of Land) and chapter 63 (Zoning) of the Town Code of the Town of Carmel adopted by the Town Board of the Town of Carmel on December 23, 1987, and a Historic Preservation Ordinance adopted by the Town Board of the Town of Carmel on December 9, 1987. The respondents, the Town Board of the Town of Carmel and the Town of Carmel, have answered the petition and, in addition, submitted a supporting affirmation in opposition to the relief prayed for. Thereafter, petitioners submitted a reply affidavit.
FACTUAL BACKGROUND

Local Laws, 1987, No. 3

On December 9, 1987, a notice of public hearing was published in the Putnam County Courier briefly describing a proposed local law amending chapter 50 (Subdivision of Land) and chapter 63 (Zoning) of the Town Code of the Town of Carmel, and inviting public comment. The public hearing was held on December 15, 1987. Thereafter, on December 23, 1987, Local Laws, 1987, No. 3 unanimously passed, incorporating in its final form several changes to the legislation as originally proposed.
The stated purpose of Local Law No. 3 is to "require the submission of an environmental constraints map with all applications for site plan approval, residential cluster development and subdivision of land, and to provide for a determination of a number of allowable dwelling units for residential cluster developments, site plans, when applicable, as well as lot counts for standard subdivisions in the Town of Carmel.” The legislative intent is set forth to be "to prevent potential health problems, to prevent possible contamination of natural resources, to protect the water supply of residents of the Town of Carmel and to protect the health, safety and welfare of the present and future residents of the Town of Carmel” based upon the Planning Board’s recommendation that "the development of areas which are environmentally sensitive impacts adversely on residents of proposed subdivisions as well as the town as a whole.” Included in the proposed law is the important definition of "a developable lot area”, which was defined to include
"the sum of the areas of all contiguous portions of land *1052 within the minimum lot area dimension remaining after eliminating from the minimum lot area dimension, as listed in Column 5 of the Schedule of District Regulations, the following areas:
"(1) slopes of 20% or greater
"(2) designated flood zones as indicated on the Flood Boundary and Floodway Maps of the Town of Carmel, New York, Putnam County, effective date, December 18, 1986, as prepared by the Federal Emergency Management Agency
"(3) designated State and/or Town Wetlands, including ponds, streams, as indicated on the oflicial Wetlands maps of the State and Town
"(4) mature forest over 100 years old which is defined as a stand of trees covering an area of one (1) acre or more and having a density of not less than 35 trees of 16” caliber or larger per acre including not less than 20 trees per acre which are more than 100 years of age as determined by core sampling
"(5) governmentally dedicated open space governmentally designated historic sites and governmentally designated scenic vistas
"(6) exposed bedrock greater than one hundred (100) square feet of area extent.”
In complementary fashion, submission requirements for all proposed subdivisions to be submitted pursuant to chapter 50 (Subdivision of Land) of the Town Code are amended as well.
Prior to passage of Local Law No. 3, and on December 5, 1987, the respondents filed a short environmental assessment form (EAF) to assist the Town Board in determining whether the proposed law as an "action” which would have a significant affect on the environment, necessitating completion of an environmental impact statement (EIS) in order to comply with the State Environmental Quality Review Act (SEQRA) (ECL 8-0101 et seq.). Having earlier concluded that the proposed adoption of the local law constituted an "unlisted action” (6 NYCRR 617.2 [kk]), only a short-form EAF was completed to assist the Board in determining significance. (6 NYCRR 617.5 [c]; 617.11.) If it had been determined that the proposed action was environmentally significant, then the town would have been required to prepare an environmental impact statement. By resolution dated December 23, 1987, the Town Board indicated that it had "carefully considered the criteria enumerated in Section 617.11” and concluded that there would be *1053 no "significant adverse affect on the environment” in adopting the proposed law. Based on this conclusion, no environmental impact statement was prepared.

Historic Preservation Ordinance

On December 2, 1987, a notice of public hearing was printed in the Putnam County Courier inviting the public to comment on a proposed Historic Preservation Ordinance "relating to the establishment of landmarks and historic districts in the Town of Carmel.” A public hearing was conducted on December 9, 1987, and the Historic Preservation Ordinance was adopted unanimously by the Town Board at that time. No determinations pursuant to SEQRA were made because the town concluded that the passage of the ordinance was not an "action” as defined in 6 NYCRR 617.2 and 617.3.
There is nothing in the record to indicate that the Town Board failed to refer either item of legislation at issue to the Putnam County Planning Board. (General Municipal Law § 239-m.)
NATURE OF THE PRESENT PROCEEDING
As an initial matter, an article 78 proceeding is not the proper vehicle to use when seeking a declaration that an ordinance or local law is invalid. However, pursuant to CPLR 103 (c), this court hereby converts this action to one for a declaratory judgment. (CPLR 3001.)
LOCAL LAWS, 1987, NO. 3
Petitioners argue that Local Laws, 1987, No. 3 was improperly enacted, is confiscatory, arbitrary, and unreasonable, and should be annulled, set aside and declared illegal for several reasons. In support of their position, petitioners first argue that the respondents failed to comply with provisions of the Town Law, requiring, among other things, 10 days’ notice of a public hearing to consider proposed amendments to a zoning ordinance. (Town Law §§ 130, 264, 265.) Additionally, petitioners note that section 63-42 of the Town Code of the Town of Carmel itself provides for amendment procedures which were not complied with. Specifically, the Town Code provides that "the Town Board may * * * amend, supplement or change the regulations and districts herein established * * * by the Town Board’s introduction of an amending ordinance.” Petitioners place great weight on the fact that the word "ordinance” was *1054 used in the Town Code, triggering, they contend, proscription against the use of the Municipal Home Rule Law guidelines for enacting local laws. This court does not agree with either contention.
Section 10 (2) of the Municipal Home Rule Law clearly allows towns to act through the mechanism of a local law in any situation where they would previously have been limited to the ordinance, resolution, rule or regulation mechanism. (1976 Atty Gen [Inf Opns] 127; 1965 Atty Gen [Inf Opns] 83.) The fact that the Town Code uses the word "ordinance”, therefore, does not compel this court to conclude that the powers granted to the municipality by State statute are somehow abrogated. Since the town duly complied with section 20 (5) of the Municipal Home Rule Law, setting forth the notice and public hearing requirements for the passage of local laws, at first glance it appears it acted appropriately. There is, however, distinguishable authority to the contrary.
In Matter of Trifaro v Zoning Bd. of Appeals (73 Misc 2d 483 [Sup Ct, Dutchess County 1973]), Justice Grady, relying on the decision in Orange & Rockland Utils. v Town of Orangetown (Sup Ct, Rockland County, Sept. 21, 1966, McCullough, J., affd 28 AD2d 899 [2d Dept 1967]), held that the Town of Red Hook erred in amending its zoning ordinance through the mechanism of a local law after publication of a notice of public hearing which made no reference to the fact that a local law would be passed, and stated only generally that a hearing would be held on proposed "zoning changes”. Significantly, while noting that the notice of the proposed change was published on five days’ notice as required by section 20 (5) of the Municipal Home Rule Law, and that it was, therefore, timely, the court nonetheless made reference to sections 264 and 265 of the Town Law when examining the adequacy of the notice and the content therein. Since the timing of the notice was sufficient under both the Municipal Home Rule Law and the Town Law, the court does not address the issue of whether the less stringent timing allowed under the Municipal Home Rule Law is appropriate. It did, however, rely on sections 264 and 265 of the Town Law when examining the adequacy of the statement and the information it furnished, and the additional requirement of postpassage publication required by section 264 of the Town Law. Accordingly, the Trifaro case is useful on the issue of how much information a notice should contain but is not particularly useful with *1055 respect to the interplay between the Town Law and Municipal Home Rule Law requirements for the timing of notice.
Orange & Rockland Utils, v Town of Orangetown (supra) more explicitly indicated that when amending a zoning ordinance a town must comply with sections 264 and 265 of the Town Law, despite the more generous notice provisions of the Municipal Home Rule Law. There the court granted the plaintiffs motion for a preliminary injunction restraining the defendants, during the pendency of the action, from interfering with the construction of an electrical transmission line being installed on a right-of-way owned by the plaintiff within the town’s jurisdiction. During the pendency of the plaintiffs action against the town, the Town Board had amended its zoning code by Local Law No. 7 dated June 2, 1966. Based upon the authority of that local law, a violation notice was posted on plaintiffs property alleging that the plaintiff had failed to obtain a special permit required by the law. Apparently, although it is not clear in the written decision, the town had passed a previous local law diminishing the requirements for notice and public hearing contained in the Town Law, pursuant to its perceived authority under the Municipal Home Rule Law. Accordingly, when the court determined that Local Law No. 7 was "invalid by reason of noncompliance with Sections 264 and 265 of the Town Law and Section 239-M of the General Municipal Law” because the "notice provisions” contained in the Town Law and the General Municipal Law were "mandatory and cannot be superseded by enactment of a Local Law” the court was essentially ruling that a local municipality could not enact a local law requiring less stringent notice provisions than those contained in State statutes.
In both Trifaro and Orange & Rockland Utils. (supra), the Town Boards were, by all appearances, attempting to legislate away already commenced private projects allowed by their respective preamendment zoning ordinances. Moreover, the zoning amendments took place during the pendency of actions against the Town Board in the Supreme Court. Consequently, the reviewing courts would be disinclined to approve of such actions.
This case presents an entirely different factual posture, thus the court does not find itself bound by these two decisions. Since the Town of Carmel complied with the provisions of the Municipal Home Rule Law concerning notice and public hearing, and the petitioners were those among the public who *1056 were duly heard, the court does not find that the town was required to use the notice provision set forth in Town Law § 264. The notice provided was timely under the provisions of the Municipal Home Rule Law, and adequate, under both the Municipal Home Rule Law, requiring only advice as to the general intent of the legislation and a brief summary of its contents, as opposed to the full text of the law, and the Town Law. (Garlen v City of Glens Falls, 35 Misc 2d 363, affd 17 AD2d 277, affd 12 NY2d 1025 [1963]; 21 Opns St Comp, 1965, at 733.)
The petitioners’ second argument concerns the changes made to the proposed zoning amendment after the initial public hearing held on December 15, 1987. The respondents contend that such changes were de minimis. The zoning amendment as originally proposed contained an expansive definition of "developable lot area” which would restrict the land available for development in a given owner’s lot by subtraction from the total lot of various environmentally sensitive areas, including mature forests. As originally proposed, the zoning ordinance did not contain a definition of "mature forest”. As amended by resolution adopted on December 23, 1987, the same date that the local law was passed, the definition of mature forest was included as were other changes. No new notice of public hearing concerning the proposed changes was published. From the record, however, it is clear that the definition of mature forest was based upon the comments taken during the public hearing attended by at least one of the petitioners. A change to the original amendment as proposed to include such a definition is clearly not a substantial one requiring a new notice of public hearing and public hearing. (1978 Atty Gen [Inf Opns] 243; 24 Opns St Comp, 1968, at 421-423.)
The petitioners’ third argument concerns the town’s compliance with the requirements of the State Environmental Quality Review Act (SEQRA). Petitioners first allege that classifying the proposed action as an "unlisted action”, as opposed to a Type I action, was improper. Having so classified the proposed amendment to the zoning ordinance, the petitioners next contend that the respondents failed to properly consider the criteria contained in 6 NYCRR 617.11 in making their assessment of environmental significance. The petitioners allege further error in the town’s failure to complete more than a short-form environmental assessment form in order to assist the town in assessing environmental significance, and making *1057 a determination as to whether an environmental impact statement would be required.
"Strict” as opposed to "substantial” compliance with SEQRA, and the regulations promulgated thereunder, is required. (Matter of Rye Town/King Civic Assn. v Town of Rye, 82 AD2d 474, appeals dismissed 55 NY2d 747, lv dismissed 56 NY2d 985 [1982]; Matter of Martin v Koppelman, 124 AD2d 24 [2d Dept 1987].) In reviewing determinations concerning environmental matters courts are limited to determining whether the authorities involved have complied with the procedural requirements of SEQRA. (Matter of Martin v Koppelman, supra.)
After carefully reviewing the action classifications contained in the regulations, this court agrees that the amendment of the zoning ordinance constitutes an unlisted action. (Matter of Di Veronica v Arsenault, 124 AD2d 442 [3d Dept 1986]; Matter of Tehan v Scrivani, 97 AD2d 769 [2d Dept 1983].) It is not, as the petitioners contend, an "adoption of a municipality’s land use plan” nor is it "adoption of changes in the allowable uses within any zoning district” (emphasis added) or any other enumerated action required by the regulations to be classified as Type I. The town also correctly concluded that the proposed action was not a Type II action. (6 NYCRR 617.13.)
Once the town had made the determination that the proposed action was an unlisted action, it was required to determine environmental significance, and the need for filing an EIS, in accordance with the criteria listed in 6 NYCRR 617.11. To assist it in that determination, a short-form environmental assessment form, required for an unlisted action pursuant to section 617.5 (c), was used to assist it in the evaluative process. From the record presented, the town did exactly what it was supposed to do and took the aforementioned steps. Moreover, it memorialized its determination that there would be "no significant adverse affect on the environment” by the adoption of Local Law No. 3, in a resolution dated December 23, 1987. This Town Board, unlike the Town Boards involved in, for example, Di Veronica (supra), Tehan (supra) and Matter of Nielsen v Planning Bd. (110 AD2d 767 [2d Dept 1985]), complied with the procedural requirements of SEQRA and took a meaningful look at what effect the proposed amendment of its zoning ordinance would have on the environment. It should be noted that the criteria listed in section 617.11 are all qualified by the "adversity” of these impacts on the environment. It would be ironic if petitioners, who have failed to *1058 demonstrate, or even attempt to demonstrate, how the "action” would have the adverse effect on the environment envisioned by SEQRA, were allowed to prevail against a Town Board which has not only strictly complied with the statute’s requirements, but striven for its spirit as well.
With respect to the constitutional issue raised by the petitioners, this court is not unmindful of the recent decisions by the Supreme Court of the United States in First English Evangelical Lutheran Church v County of Los Angeles (482 US 304, 96 L Ed 2d 250, 107 S Ct 2378 [1987]) and Nollan v California Coastal Commn. (483 US 825, 97 L Ed 2d 677, 107 S Ct 3141 [1987]), discussing the concept of "temporary takings”, through both legislative acts, and conditions imposed upon the grant of a permit, respectively. The petitioners have not approached the issues discussed therein. There has not been a sufficient showing by the petitioners, as landowners purportedly effected by the legislation, that the local law will in fact deprive the petitioners of all use of their land. As the respondents correctly note the legislation is prospective.
Finally the record is unclear as to whether there has been a lack of compliance with section 239-m of the General Municipal Law. Accordingly, the parties are directed to submit documentary proof on the narrow issue of whether the Putnam County Planning Board was given notice of the proposed law prior to its passage, or since, within 15 days of entry of this order. The parties are also directed to submit memoranda of law on this same issue, within the same time frame. The court reserves decision pending these submissions.
HISTORIC PRESERVATION ORDINANCE
Petitioners have also challenged the town’s enactment of a Historic Preservation Ordinance. The respondents have conceded that the Town Law provisions concerning the enactment of ordinances apply with respect to this legislation, and that the 10-day notice of public hearing required under séction 130 of the Town Law was not, in fact, given. This court agrees that the fact that only seven days’ notice was given is more than a mere irregularity, and creates a jurisdictional defect. (Avelli v Town of Babylon, 54 Misc 2d 662 [Suffolk County 1967].) The Historic Preservation Ordinance is, therefore, invalid.